UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STORM ERIE                                                                CIVIL ACTION

VERSUS

NANCY HUNTER                                                  NO. 21-00267-BAJ-RLB

### RULING AND ORDER

In this civil rights action, Plaintiff alleges that his First Amendment rights were violated when he was forced to attend a religious service by Defendant Nancy Hunter, a psychiatric aide at the Eastern Louisiana Mental Health System. Now Defendant moves to dismiss Plaintiff's action on the sole basis that she is shielded from liability by the qualified immunity doctrine. (Doc. 8). Plaintiff opposes Defendant's motion. (Doc. 11). For reasons below, Defendant's motion will be denied, and this matter will be referred to the Magistrate Judge for entry of a scheduling order.

### I. RELEVANT BACKGROUND

The Court accepts the following allegations as true for present purposes:

Plaintiff is a patient committed by court-order to the care of Eastern Louisiana Mental Health System (ELMHS), a state-run mental health facility located in Jackson, Louisiana. (Doc. 1 at ¶¶ 7-8). Currently, Plaintiff is housed in ELMHS's Secure Forensic Facility (SFF). (*Id.* at ¶¶ 8, 16). As a consequence of his commitment, Plaintiff's "movement" is restricted and maintained by ELMHS employees. (*Id.* at ¶ 12). If Plaintiff disobeys the order of any ELMHS employee he risks being "written up," a sanction that may "result in loss of privileges and decreased freedoms." (*Id.* at

¶ 13).

Defendant is a psychiatric aide employed by ELMHS. (*Id.* at ¶¶ 1-2, 18). On Saturday, January 9, 2021, at around 10:00 a.m., Plaintiff was in his room when Defendant approached him and stated that he and all other residents housed in the SFF would be required to attend a religious service in the recreational center. (*Id.* at ¶¶ 15-18). Plaintiff responded that he did not want to attend, to which Defendant replied that "she was going to get a guard and force everyone to go" because "she was the only aid on the ward so she could not leave anyone in their room." (*Id.* at ¶¶ 18-19). "Under the threat of forced compulsion, and afraid of being written up or more substantial punishment, [Plaintiff] attended the religious service," which was "decidedly Christian … (not agnostic) and lasted one hour." (*Id.* at ¶¶ 20-21).

Plaintiff promptly reported the events of January 9 to his attorney who, in turn, provided ELMHS's Chief Executive Officer, Hampton Lea, written notification of the same. (*Id.* at ¶ 28). Counsel's letter prompted a response from "an attorney for the Louisiana Department of Health," who stated that "ELMHS is investigating the matter … [and] will be in touch once the investigation is completed." (*Id.* at ¶ 29).

Approximately one month later, on February 8, 2021, Plaintiff was summoned to a meeting with SFF's director Gino Bertucci, where Mr. Bertucci shared with Plaintiff the results of ELMHS's investigation. (*Id.* at ¶ 31). At this meeting, Mr. Bertucci informed Plaintiff: (i) that Defendant "admitted that the incident occurred"; (ii) that ELMHS "conceded that the events in question occurred and that [Plaintiff] was, indeed, forced to attend a religious service"; and (iii) that ELMHS "was going to

're-educate' the staff and that the staff could not force someone to go to a church function." (*Id.* at ¶¶ 33-35). Despite the Department of Health's prior correspondence with Plaintiff's counsel, no attempt was made to contact Plaintiff's counsel, or to involve counsel in Plaintiff's meeting with Mr. Bertucci. (*Id.* at ¶ 32).

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on May 10, 2021. (Doc. 1). Plaintiff's Complaint alleges that his forced attendance at the January 9 religious service violated his First Amendment right to be free from state action advancing and prescribing religious beliefs and expression. (*Id.* at ¶¶ 39-44). Plaintiff's pursues his First Amendment claim against Defendant in her individual capacity only, and seeks an award of damages (actual, nominal, and punitive) and attorneys' fees and costs. (*Id.* at ¶¶ 48, 50).

Now, Defendant seeks dismissal of Plaintiff's First Amendment claim, on the sole basis that she is shielded from liability by the doctrine of qualified immunity "because her conduct in the specific situation in which she was confronted was not clearly unlawful." (Doc. 8-1 at 5).[1] Plaintiff opposes Defendant's Motion, arguing that Defendant's qualified immunity defense fails because Plaintiff's First Amendment rights were plainly violated when he "was forced to attend a religious church service against his will and expressly stated his objections," and that his rights were clearly

---

[1] Defendant also purports to seek dismissal of claims under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, and encourages the Court to decline supplemental jurisdiction over any state law claims. (Doc. 8 at 4-5, 12). As noted in Plaintiff's opposition briefing, Plaintiff is not pursuing any such claims, and no such claims appear in Plaintiff's Complaint. (Doc. 11 at 12). Accordingly, the Court does not address these additional arguments.

3

established because the Supreme Court has unequivocally held that state actors cannot "force [or] influence a person to go to or to remain away from church against his will," *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947). (Doc. 11 at 7-8).

### III. DISCUSSION

#### A. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, the only issue is whether Defendant is entitled to qualified immunity. Qualified immunity shields a government official from liability for civil damages "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 503 (2019). Its intended purpose is to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties" by making it possible for government officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Put differently, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken

4

judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Fifth Circuit's two-pronged test for qualified immunity asks (1) "whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," and (2) "whether the right was 'clearly established.'" *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020). A court may analyze these prongs in either order, and resolve the case on a single prong. *Id.* at 190.

Relevant here, to determine whether a constitutional right was "clearly established" at the time of the alleged violation, the Court looks for guidance from controlling Supreme Court and Fifth Circuit authority. *See McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002). "[I]n the absence of directly controlling authority, a 'consensus of cases of persuasive authority' [from other Circuits] might, under some circumstances, be sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were lawful." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999)).

The "clearly-established" prong imposes a "demanding standard" that "is difficult to satisfy." *Cunningham*, 983 F.3d at 191. Importantly, "[a] right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cunningham*, 983 F.3d at 191 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). The "right must be defined with

specificity," not "at a high level of generality." *Emmons*, 139 S. Ct. at 503 (quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The "salient question" is "'whether the state of the law at the time of the state action gave the state actors fair warning that their alleged treatment of the plaintiff was unconstitutional.'" *McClendon*, 305 F.3d at 329 (quoting *Roe v. Texas Dep't of Protective & Regul. Servs.*, 299 F.3d 395, 409 (5th Cir. 2002)); *see also Mullenix*, 577 U.S. at 12 ("The dispositive question is whether the violative nature of the *particular* conduct is clearly established." (quotation marks omitted)).

"When a defendant asserts qualified immunity, the plaintiff has the burden of proving that it is inapplicable." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012).

### B. Discussion

Applying this framework, the Court determines that Plaintiff has carried his burden of proving that qualified immunity is inapplicable at this early stage of the proceedings. The specific constitutional right at issue is Plaintiff's right, under the Establishment Clause, to be free from state action forcing him to attend a Christian religious service. Plaintiff correctly notes that the Supreme Court has spoken directly to this issue, and held unequivocally that the state may not "force ... a person to go to ... church against his will":

> The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force

6

> him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance.

*Everson*, 330 U.S. at 15–16. Indeed the Supreme Court has emphasized, reaffirmed, and extended this principle so many times that now "[i]t is beyond dispute that … [the] government may not coerce anyone to support or participate in religion or its exercise[.]" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (citing authorities)); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000) (same).

Here, Plaintiff alleges that Defendant, as an agent of the state of Louisiana, forced him to attend a one-hour Christian service against his express protests, under threat of immediate physical force and additional sanctions to follow. These allegations fly straight into the teeth of the Establishment Clause's prohibition against state action coercing a person to participate in religion. *Lee*, 505 U.S. at 587; *Everson*, 330 U.S. at 15–16. Plaintiff's allegations establish a constitutional violation for present purposes.[2]

Further, the Court is satisfied that Plaintiff's right to be free from forced attendance at a religious service was "clearly established" at the time of the alleged violation. As noted in Plaintiff's opposition briefing, for three-quarters of a century the Supreme Court has held that, at minimum, the Establishment Clause prohibits the state from forcing an individual to attend church and/or participate in religious

---

[2] Even Defendant does not dispute that Plaintiff's constitutional rights were violated. Instead, Defendant limits her argument to whether Plaintiff's constitutional rights were "clearly established." (Doc. 8-1 at 5 ("Ms. Hunter is entitled to the defense of qualified immunity because her conduct in the specific situation in which she was confronted was not clearly unlawful.")).

7

activities. *Everson*, 330 U.S. at 15; *Lee*, 505 U.S. at 587; *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 302. Plaintiff's allegations establish that Defendant simply disregarded this great weight of unambiguous authority, and forced Plaintiff to attend a religious service against his will, reasoning "she could not leave anyone in their room." (*Id.* at ¶¶ 18-19).[3] Suffice for now to say that the state of the law in January 2021 gave Defendant "fair warning that [her] alleged treatment of the plaintiff was unconstitutional." *McClendon*, 305 F.3d at 329 (quotation marks omitted).

Defendant disagrees that Plaintiff's right to be free from religious coercion was clearly established when she forced him attend the religious service, and raises a variety of objections. None are persuasive.

First, Defendant argues that her actions were reasonable under the circumstances because she was the only psychiatric aide on duty, was required to maintain supervision of all residents at all times, and Plaintiff's protest presented her the unenviable choice of either accommodating Plaintiff's right to be free from religious coercion or prohibiting all residents from attending church service. (Doc. 8-1 at 8). In this light, Defendant contends that she exercised "fair and reasonable judgment in ensuring the safety and security of the residents under her care while also allowing those residents who wish to attend the service to do so." (Doc. 8-1 at 11).

This argument fails on multiple levels. First, the "clearly established" prong of the qualified immunity analysis does not measure the reasonableness of a defendant's

---

[3] What motivated Defendant to force Plaintiff's attendance at the church service may ultimately bear on the success of Plaintiff's claim (for reasons addressed below). This issue of Defendant's motivation/intent, however, cannot be reasonably determined from Plaintiff's allegations, and deserves evidentiary development.

actions against the "circumstances" presented; rather, it measures the reasonableness of the defendant's actions against the "state of the law" at the time the defendant acted. *McClendon*, 305 F.3d at 329. As explained, when Defendant forced Plaintiff to attend the religious service, the law quite clearly held that the state may not "coerce anyone to … participate in religion or its exercise." *Lee*, 505 U.S. at 587. Defendant's alleged acts unambiguously violated this mandate.

Second, assuming for present purposes that Defendant only had two options available to her, she nonetheless chose the option that favored religion, raising the specter that Defendant "violate[d] that central Establishment Clause value of official religious neutrality." *McCreary Cty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 860, (2005). Ultimately, whether Defendant's choice to force Plaintiff's attendance at the religious service violated the Establishment Clause's guarantee of religious neutrality will turn on whether she acted "with the ostensible and predominant purpose of advancing religion." *Id.* Defendant's "predominate" purpose for requiring Plaintiff's attendance—*i.e.*, Defendant's motive/intent—cannot be determined from the allegations of Plaintiff's complaint (which, again, must be viewed in Plaintiff's favor). Rather, Defendant's predominate purpose can only be determined through the discovery process.

Third, whether, indeed, Defendant had only two options in the face of Plaintiff's resistance is a question of fact that also cannot be determined from Plaintiff's allegations. And, again, the answer to this question may bear on the issue of whether Defendant's predominate purpose was to advance religion in violation of

9

the Establishment Clause.

Next, Defendant objects that Plaintiff's allegations establish only that "he was 'forced' to attend the church service," not that he was "forced ... to participate in said service." (Doc. 8-1 at 9). This objection is a non-starter. The law draws no distinction between coerced attendance and coerced participation: each is equally offensive under the Establishment Clause. *Everson*, 330 U.S. at 15 (the state cannot "force nor influence a person to go to ... church against his will"); *Weisman*, 505 U.S. at 587 (the state cannot "coerce anyone to ... participate in religion or its exercise").

Additionally, Defendant directs the Court's attention to three "analogous" cases rejecting *pro se* prisoners' claims that prison officials forced them to attend religious services in violation of the Establishment Clause: *Miller v. Bayou Dorcheat Corr. Ctr.*, No. 16-cv-0225, 2017 WL 4414159 (W.D. La. Sept. 18, 2017); *Triplett v. LeBlanc*, No. 13-cv-243, 2015 WL 893057 (M.D. La. Mar. 2, 2015); and *Allen v. Jones*, No. 08-cv-01731, 2010 WL 2680932 (W.D. La. May 7, 2010). (*See* Doc. 8-1 at 9-12 & fn. 49). Without saying so, Defendant invites the Court to dismiss Plaintiff's Establishment Clause claim based on the standards and reasoning set forth in these prisoner cases.

Defendant's "analogy" also fails on multiple levels. As an initial matter, it assumes that prisoners and civil detainees are equals under the law, and that, therefore, the same standards applicable to prisoners' constitutional claims are applicable to civil detainees' claims. Yet, Defendant offers no controlling authority to

10

support this assumption.[4] And, indeed, the Supreme Court instructs otherwise, stating expressly that civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). The basis of this distinction is easily understood: unlike imprisonment, "[c]ivil detention is by definition non-punitive." *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002); *see also Bohannan v. Doe*, 527 F. App'x 283, 289 (5th Cir. 2013) (explaining that "civil proceedings to commit citizens ... are not intended to have punitive effects" (collecting cases)).

Second, even if the Court assumes that the same standards apply, Defendant still cannot prevail at this stage. Why? Because even a prisoner does not surrender his constitutional rights at the prison gate. *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). Rather, the same constitutional rights apply, but their scope is narrowed to allow incidental infringements "reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89, such as "institutional order, safety, and security." *Pesci v. Budz*, 730 F.3d 1291, 1298 (11th Cir. 2013). On the other hand, the Establishment Clause prohibits the state and its agents from forcing a prisoner (or a parolee) to participate in religious-based activities as a condition of punishment *or*

---

[4] Other Circuits have addressed the issue of what standard applies to civil detainees' constitutional claims, and determined that the proper standard is a "variant" of the standard applicable to prisoners' claims. *E.g., Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019); *Brown v. Phillips*, 801 F.3d 849, 853 (7th Cir. 2015) (collecting cases). Defendant, however, has not directed the Court's attention to any Supreme Court or Fifth Circuit case addressing the issue, and this Court's own research has not identified any such case.

11

rehabilitation. *See Janny v. Gamez*, 8 F.4th 883, 915 (10th Cir. 2021) (rejecting parole officer's qualified immunity defense and explaining that the Establishment Clause clearly prohibits requiring a parolee to participate in Alcoholics Anonymous—a religious-based substance abuse program—as a condition of parole ((discussing authorities)), *cert. dismissed*, 142 S. Ct. 878 (2022). Again, whether Plaintiff's forced attendance at a religious service was reasonably related to institutional safety, or was an unlawful condition of Plaintiff's rehabilitation cannot be determined by the allegations of Plaintiff's Complaint, and must be developed through discovery.

Finally, the "analogous" prisoner cases cited by Defendant are, in fact, substantially *dissimilar* to the case presented here. *Miller* involved an inmate whose Establishment Clause claim was dismissed at summary judgment because he failed to prove his allegation that he was forced to attend a religious service at risk of punishment. *Miller*, 2017 WL 4414159, at *1. Here, by contrast, we have an allegation awaiting evidentiary development.

Similarly, *Allen* involved a prisoner whose allegations of coerced religious participation did not survive summary judgment. The plaintiff alleged that he was forced to attend a religious service but, in fact, his attendance was required because he chose voluntarily—but incorrectly—to leave his cell during "church call out," and prison policy required that any prisoner outside his cell at such time go to church. On these facts, the Court determined that the plaintiff's forced attendance was merely a "coincidental effect" of having left his cell at the wrong time, and, further, that the prison's policy of mandatory attendance during church call out did not advance

12

religion, and served the "secular security purpose [of] controlling inmate movement at all times (not just during church services)." *Allen*, 2010 WL 2680932, at *4. Here, by contrast, Plaintiff alleges that he was removed *from* his room, and that his forced attendance was *not* the result of any mistake or inadvertence on his part.

Finally, *Triplett* involved an inmate minister's allegations that he was stripped of his prison ministry duties after he failed to attend a scheduled church call-out. At the same time, however, the plaintiff conceded "that his job assignment at the prison was as an inmate minister, which assignment, by definition, included attending to the religious and spiritual needs of fellow inmates." *Triplett*, 2015 WL 893057, at *8. The Court dismissed plaintiff's constitutional claim, reasoning that plaintiff lost his minister duties as a disciplinary action for having "failed to attend an obligatory function," *not* in retaliation for exercising his First Amendment rights. *Id.* ("In the Court's view, this contention does not implicate the plaintiff's First Amendment religious rights, any more than would disciplinary action for any inmate who failed to attend an obligatory function that related to the inmate's job assignment at LSP."). Here, by contrast, Plaintiff is *not* attempting "to shoe-horn a simple garden-variety claim of disciplinary action into an assertion of his constitutional right to the free exercise of religion." *See id.* Rather, he has alleged a direct (not incidental) violation of his right to be free from forced attendance at a religious service. In sum, none of the cases cited by Defendant are even remotely "analogous" to the issues presented here, much less dispositive.

Finally, Defendant criticizes Plaintiff for failing to identify "any case with the

same, or even similar, factual context to the case at hand" to establish that forcing a civil detainee to attend a religious service violates the Establishment Clause. (Doc. 12 at 6). The Court is not swayed. The law does not "require a case directly on point," rather, existing precedent must have placed the ... constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Again, it is beyond debate that the Establishment Clause prohibits state actors from coercing anyone to "participate in religion or its exercise," *Lee*, 505 U.S. at 587, a principle which has been repeatedly extended to prohibit the state from forcing a detainee to choose between a religious activity or punishment, or forcing a detainee's participation in a religious activity as a mandatory condition of rehabilitation. *See, e.g., Janny*, 8 F.4th at 913-916 (discussing cases).

To repeat: the state of the law in January 2019 gave Defendant "fair warning" that her alleged actions violated the Establish Clause. *McClendon*, 305 F.3d at 329. And while Defendant's motive/intent may ultimately bear on the outcome of Plaintiff's Establishment Clause claims—particularly if those motives are consistent with the state's interest in maintaining safety of all ELMHS residents—such issues cannot be determined from the allegations of Plaintiff's complaint and require factual development through discovery.

## IV.   CONCLUSION

**IT IS ORDERED** that Defendant's **Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. 8)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for entry of a scheduling order.

Baton Rouge, Louisiana, this 23rd day of March, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA